**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **B.S. and K.S.**

**No. 23-146** (Randolph County CC-42-2020-JA-91 and CC-42-2020-JA-92)

**MEMORANDUM DECISION**

Petitioner Mother B.F.[1] appeals the Circuit Court of Randolph County's February 12, 2023, order terminating her parental rights to B.S. and K.S, arguing that the circuit court erred when it terminated her post-dispositional improvement period and terminated her parental rights.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In July 2020, the DHS filed a petition alleging that petitioner abused and neglected her children by abusing drugs and allowing others who abuse drugs to care for and be in the presence of her children. The petition further alleged that petitioner neglected to get appropriate dental, vision, and mental health care for B.S., as she inexplicably failed to take B.S. for a surgery, did not provide him with his ADHD medication as prescribed, failed to address his rotting teeth, and neglected to replace his broken glasses. The Child Protective Services ("CPS") employee who visited the home observed petitioner, K.S., and two men at the home. The CPS employee also observed that the home in which B.F. and the children resided was in "deplorable" condition with trash, bugs, dirt, and exposed wires present. The CPS employee identified one of the men present at the home as a known drug user and he openly admitted that he used drugs on that day. Petitioner informed the CPS employee that the children's father did not use drugs, but later reported she left the relationship due to his drug use. The CPS employee traveled to the father's residence, as B.S. was reportedly staying with him. Upon arrival at the father's residence, the CPS employee

---

[1]Petitioner appears by counsel Stephen Mallow Jr. The West Virginia Department of Human Services appears by counsel Attorney General Patrick Morrisey and Assistant Attorney General Katica Ribel. Counsel Heather Weese appears as the children's guardian ad litem ("guardian").

[2]Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2]We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

observed the child sitting outside with another known drug user. Further, the children's father admitted to using drugs one day prior to the CPS employee's visit.

In October 2020, petitioner stipulated to exposing the children to inappropriate individuals and failing to obtain necessary medical care. The circuit court entered an order adjudicating petitioner of abusing and neglecting the children based upon her stipulation. After her adjudication, petitioner filed a written motion for a post-adjudicatory improvement period, which was later granted. According to the record, petitioner's improvement period required her to complete services including parenting courses, adult life skills, healthy relationship classes, and individual counseling. Additionally, petitioner was to follow through with all recommendations from her drug and alcohol assessment, abstain from drugs and alcohol, and complete random drug screens. Finally, petitioner was required to provide valid prescriptions for all her medications. The record indicates that petitioner was disqualified from participation in family drug treatment court because of her refusal to acknowledge her drug problem. As the court held various review hearings, it continued petitioner's improvement period on several occasions and later granted petitioner a post-dispositional improvement period in December 2021. However, in April 2022, the guardian moved to terminate petitioner's improvement period based upon petitioner's drug use throughout the proceedings. The guardian noted that petitioner was able to produce negative blood screens from October 2021 through December 2021. However, her blood tests were positive for methamphetamine on January 21, 2022, and February 8, 2022.

At a hearing on the guardian's motion, petitioner claimed that her positive test results were due to her job as a housekeeper at a resort, where she claims to have encountered drugs while cleaning. Despite these positive screens, the court extended petitioner's improvement period. However, by September 2022, the court found that petitioner had positive screens for alcohol and noted that the children had been in custody for fifteen of the most recent twenty-two months. Thus, the court scheduled a status hearing to review petitioner's progress and permitted petitioner's improvement period to continue.[3]

At the December 2022, status hearing, the executive director of North Central Community Corrections, the entity that performed petitioner's drug screens, confirmed that petitioner tested positive for various drugs and alcohol at multiple screens. Some tests were positive for methamphetamine and alcohol, while others were positive for prescription drugs for which petitioner did not present a prescription. The witness noted that petitioner's December 2020 urine sample had no temperature. She further noted that at no point did petitioner acknowledge her drug and alcohol use, despite her multiple positive tests. A DHS case worker who worked with the petitioner and her family testified that the children were in foster care for twenty-nine months and that the DHS's recommendation was termination, which was in the children's best interest. She went on to state that at no point did petitioner have a period of sobriety long enough to alleviate the DHS's concerns for the children's safety. The witness further stated that petitioner at no point acknowledged her drug or alcohol use, despite her many positive tests. Petitioner testified, stating that she never used drugs or alcohol during her improvement period. At the conclusion of the

---

[3] The court referred to this hearing as an "end review hearing." For clarity, we refer to it simply as a status hearing.

hearing, the court ended petitioner's improvement period as unsuccessful due to petitioner's recent positive drug and alcohol screens.

In January 2023, the court held a dispositional hearing at which it took judicial notice of the testimony presented at the previous status hearing. Petitioner again testified that she never used drugs or alcohol at any point during the proceedings, despite multiple positive drug and alcohol screens. Then, she testified that although she did not use drugs, she participated in substance abuse treatment at Recovery Resource. Ultimately, the court found that petitioner abused drugs and failed to recognize her drug problem, despite her multiple positive screens for various drugs and alcohol. As a result of her drug use, the court determined that she was presently unwilling and unable to adequately provide for the children's needs. The court noted that her use of drugs and alcohol directly contravened the terms of her improvement period and precluded her from a less-restrictive disposition. The court found that petitioner participated in many services but declined drug treatment. The court determined that reunification was not in the children's best interest and that the children's permanency required termination of petitioner's parental rights. The court noted that petitioner was given numerous extensions and was offered a litany of services, but there was no possibility that petitioner could recognize and resolve the conditions that led to the filing of the initial petition. Ultimately, the court terminated petitioner's parental rights.[4] It is from the dispositional order that petitioner appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, petitioner first argues that the court erred when it terminated her post-dispositional improvement period because the evidence was insufficient to find that petitioner did not fully participate. West Virginia Code § 49-4-610(7) directs a circuit court, "[u]pon the motion by any party," to "terminate any improvement period . . . . when the court finds that respondent has failed to fully participate in the terms of the improvement period." Furthermore,

> [a]t the conclusion of the improvement period, the court shall review the performance of the parents in attempting to attain the goals of the improvement period and shall, in the court's discretion, determine whether the conditions of the improvement period have been satisfied and whether sufficient improvement has been made in the context of all the circumstances of the case to justify the return of the child.

Syl. Pt. 6, *In re Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991). While petitioner contends that she "extended genuine effort and energy into the post-dispositional improvement period," the court found that she did not fully participate because she could not abstain from drugs and alcohol—one of the most central terms of her improvement period. Further, it is important to stress that the court far exceeded statutorily available improvement period time limits by granting petitioner a total of five extensions over the course of two years. *See* W. Va. Code § 49-4-610(9) ("[N]o combination of any improvement periods or extensions thereto may cause a child to be in foster care more than

---

[4]The father's parental rights were relinquished below. The permanency plan for the children is adoption in the current placement.

fifteen months of the most recent twenty-two months, unless the court finds compelling circumstances by clear and convincing evidence that it is in the child's best interests to extend the time limits contained in this paragraph"). Thus, petitioner's argument that the court improperly terminated her improvement period is meritless.

Petitioner also argues that the circuit court erred when it terminated her parental rights, contending that there was a less restrictive alternative available. To support her argument, petitioner states that she participated in drug testing and supervised visitations. Petitioner asserts that a guardianship disposition as contemplated by West Virginia Code § 49-4-604(c)(5) was appropriate. However, we have held that termination is appropriate "when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)(6)] that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 5, in part, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)).

No reasonable likelihood that the conditions of neglect or abuse can be corrected exists when "the abusing parent or parents have habitually abused or are addicted to alcohol, controlled substances or drugs to the extent that proper parenting skills have been seriously impaired and the person or persons have not responded to or followed through the recommended and appropriate treatment which could have improved the capacity for adequate parental functioning." W. Va. Code § 49-4-604(d)(1). We have also held that "[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem . . . results in making the problem untreatable." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013). The evidence shows that after nearly two years of improvement periods, petitioner was unable to abstain from drugs and alcohol and refused to acknowledge her substance abuse issues. The court explicitly stated that a guardianship disposition was inappropriate due to petitioner's refusal to acknowledge a substance abuse problem. The court determined that there was no possibility that petitioner could recognize and resolve the conditions that led to the filing of the initial petition and found that the children's best interest was to remain in the placement where they had been for the last thirty months. Based upon ample evidence, the court properly terminated petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 12, 2023, order is hereby affirmed.

Affirmed.

**ISSUED**: April 15, 2024

**CONCURRED IN BY**:


Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn